MICHIGAN EMPLOYMENT RELATIONS COMMISSION v
DETROIT SYMPHONY ORCHESTRA, INC

1. Appeal and Error—Court of Appeals—Evidence—Substantial
   Evidence Standard—Michigan Employment Relations Com-
   mission—Symphony—Findings of Fact.

   The Court of Appeals correctly applied the "substantial evidence"
   standard when it reversed a determination of the Michigan
   Employment Relations Commission Board in favor of a plain-
   tiff, who alleged that he lost his employment with the Detroit
   Symphony Orchestra because of his continued participation in
   union organizational activities, on the ground that the findings
   of fact of the Board were not supported by substantial evidence.

2. Appeal and Error—Statutes—Michigan Employment Relations
   Commission—Findings of Fact—Constitutional Law.

   The statutory standard of appellate review of Michigan Employ-
   ment Relations Commission Board findings of fact is that "[t]he
   findings of the board with respect to questions of fact if sup-
   ported by competent, material and substantial evidence on the
   record considered as a whole shall be conclusive"; this standard
   comports with a section of the Michigan Constitution which
   provides that "[t]his review shall include, as a minimum, the
   determination whether such final decisions, findings, rulings
   and orders are authorized by law; and, in cases in which a
   hearing is required, whether the same are supported by compe-
   tent, material and substantial evidence on the whole record
   (Const 1963, art 6, § 28; MCLA 423.23[e]).

3. Constitutional Law—Appeal and Error—Administrative Law
   —Review—Evidence.

   What the drafters of the Michigan Constitution intended, by use
   of the sentence "[t]his review shall include, as a minimum, the
   determination whether such final decisions, findings, rulings
   and orders are authorized by law; and, in cases in which a

---

References for Points in Headnotes
[1–3, 5] 5 Am Jur 2d, Appeal and Error §§ 831, 834.
   48 Am Jur 2d, Labor and Labor Relations §§ 12, 246.
[4] 5 Am Jur 2d, Appeal and Error § 839.

hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record", was a review which considers the whole record, not just those portions of the record supporting the findings of the administrative agency; although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency (Const 1963, art 6, § 28).

4. APPEAL AND ERROR—SUPREME COURT—LABOR RELATIONS—TRIAL EXAMINER—RECORD.

The findings of a Labor Mediation Board trial examiner are a part of the record the Justices of the Michigan Supreme Court are entitled to consider in exercising their review power.

5. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMISSION —SYMPHONY—TROMBONIST—EVIDENCE—SUBSTANTIAL EVIDENCE —CONJECTURE.

Michigan Employment Relation Commission Board's conclusion that the Detroit Symphony's failure to rehire a trombonist was motivated by anti-union animus was not supported by "substantial evidence".

Appeal from Court of Appeals, Division 1, Quinn, P. J., and McGregor and Bronson, JJ., denying petition for order of enforcement. Submitted September 12, 1974. (No. 14 September Term 1974, Docket No. 55,065.) Decided November 21, 1974.

Petition in the Court of Appeals by Michigan Employment Relations Commission for enforcement of its order against Detroit Symphony Orchestra. Allen H. Chase moved to intervene as a party plaintiff. Petition denied and motion to intervene dismissed. Plaintiff and intervenor appealed. Motion to intervene granted and petition remanded to Court of Appeals for further consideration, for an opinion, and a new judgment, 387 Mich 424. Petition denied. Intervenor appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *James D. Tracy* and *William S. Hurst),* for defendant.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes),* for intervenor.

J. W. FITZGERALD, J. The principal question before us is whether the Court of Appeals erred in reversing a determination of the Michigan Employment Relations Commission Board in favor of plaintiff-appellant Chase on the ground that the findings of fact of the Board were not supported by substantial evidence. We conclude that the Court of Appeals correctly applied the "substantial evidence" standard and affirm.

## I

It is the position of plaintiff Allen Chase that he lost his employment with the Detroit Symphony Orchestra because of his continued participation in union organizational activities contrary to MCLA 423.16; MSA 17.454(17). Undisputed evidence introduced at an evidentiary hearing held before a trial examiner of the Labor Mediation Board indicates that plaintiff's "discharge"[1] by the Symphony is traceable to events occurring on February 27, 1968 and shortly thereafter.

The master contract governing relations between the Detroit Symphony Orchestra and the Detroit Federation of Musicians, plaintiff Chase's union, provided that employment contracts should

[1] The term "discharge" is used advisedly because there is dispute as to whether plaintiff Chase quit or was fired.

be signed and in by March 1, 1968. Past practice indicated, however, that the Symphony had not always strictly adhered to this cutoff date. Early in February 1968, Chase, a trombonist for many years with the Symphony, was offered a one-year contract of employment. On February 27, Chase approached Bistritzky, personnel manager of the Symphony and a union-management agent, and Harrington, general manager of the Symphony, to "negotiate" his contract. He was offered a $10 per week raise and rejected it out of hand, stating "Get yourself another boy. I do not accept." When contacted shortly thereafter by Bistritzky, Chase indicated that he had not changed his mind. On March 1, 1968, Bistritzky informed the union that Chase's position was vacant.

Chase later contacted Bistritzky on March 2, 1968 and at that point was informed that the Symphony was auditioning another trombonist for his position. He then stated that he accepted the offer only to learn from Bistritzky that in the Symphony's view the offer had been withdrawn. A series of events ensued which entailed Chase's reapplication for employment with the Symphony and the eventual hiring of another trombonist. Chase introduced evidence in an effort to show that the Symphony's actions in failing to hire him were discriminatory and attributable to anti-union animus.

Joseph Bixler, the trial examiner presiding at the evidentiary hearing, concluded after a lengthy recitation and discussion of the facts:

"There is not sufficient evidence in this record to establish that the orchestra discriminated against Chase in violation of the Act. * * * Chase quit the Orchestra when he rejected the contract and the offered raise with the abrupt 'get yourself another boy.' "

He therefore recommended that the charges be dismissed. The MERC Board disagreed with the findings of its examiner, concluding:

" * * * the Symphony applied the March 1 cut-off discriminatorily with respect to Chase.";

and

"[T]he only plausible reason for the Symphony's discriminatory treatment of Chase is his union activity."

The Court of Appeals initially refused to enforce the order of the MERC Board in favor of Chase, concluding in an order of that Court that the Board's findings of fact were not supported by substantial evidence. Upon further review, this Court (387 Mich 424; 196 NW2d 763 [1972]) determined that the decisional process employed by the Court of Appeals had been "unsound" and remanded for further consideration and preparation of a full opinion. Upon remand the Court of Appeals again denied enforcement to the order of the MERC Board, reiterating, in an unpublished per curiam opinion containing discussion of the facts, that Court's view that the Board's finding of facts were not supported by substantial evidence.[2] The case is before us on leave granted.

[2] The treatment of this case in the Court of Appeals on remand has generated a good deal of appellate "static". Appellants MERC and Chase contend that certain language used by the Court of Appeals in its opinion indicates that that Court misperceived its appellate function and further that the opinion leaves to conjecture the factual basis for conclusions reached. A second contention raised is that fair procedure was not provided because opportunity for oral argument was not given in the Court of Appeals.

While certain portions of the Court of Appeals' opinion are ambiguous, we find reviewable that Court's basic determination that the MERC Board's findings are *not supported by substantial evidence*. Opportunity for oral argument should have been provided upon proper request by the parties. *Michigan Employment Relations Commission v Reeths-Puffer School Dist,* 391 Mich 253, 270; 215 NW2d 672 (1974). At the request of the parties, however, we proceed to "fill

## II

The standard of appellate review of MERC Board findings of fact is set forth in the labor mediation act as follows:

" * * * The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive. * * * " MCLA 423.23(e); MSA 17.454(25)(e).

This standard comports with Const 1963, art 6, § 28 which sets forth the minimum constitutional scope of judicial review of administrative decisions.

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. *This review shall include, as a minimum,* the determination whether such final decisions, findings, rulings and orders are authorized by law; and, *in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.* * * * " (Emphasis supplied.)[3]

The Court of Appeals reversed findings of fact of the MERC Board which were supported by some record evidence. In this context, the meaning of the above-cited "substantial evidence" standard is critical to the outcome of this appeal. To ascertain this meaning we turn to the debates surrounding the adoption of art 6, § 28 at the Constitutional Convention of 1961.

the appellate gap" by providing opportunity for oral argument and full consideration in this Court.

    [3] Similar language is used in the administrative procedures act to set forth the standard of appellate review. *See* MCLA 24.306(1)(d); MSA 3.560(206)(1)(d) and fn 6, *infra.*

Art 6, § 28 was originally introduced at the Convention in slightly different form as "Proposal 95" of the Committee on Judicial Branch.[4] During extensive debate on March 5, 1962, Delegate Krolikowski, speaking on behalf of the committee, stated:

" 'Substantial evidence' [as that term was used in the Proposal] means such evidence as a reasonable mind will accept as adquate [sic] to justify conclusion. 'On the whole record' means that the reviewing magistrate can consider all the evidence in favor and all the evidence against a certain determination."

Delegates Everett and King, whose statements reflected the position of proponents of the proposal favoring meaningful court review, respectively elaborated:

"I would like to give you the background of this proposal. To begin with, there were delegate proposals, and they went much further than this. Many of us who sat in the judicial committee felt a need for judicial review, but not the type of review and the extensive review that some of the delegate proposals offered. * * *

" * * * We developed within the committee, * * * language which we felt would hit a medium between a review which would be so extensive as to make administrative agencies' work virtually useless, and a review such as we frequently now have which makes court review meaningless";

---

[4] Committee Proposal 95 as initially introduced read as follows:

"All final decisions, findings, rulings and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as shall be provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law, and, in cases in which a hearing is required, whether the same are clearly supported by reliable, probative, and substantial evidence on the whole record."

and

"The idea here is to get full, fair, honest to goodness judicial review, not de novo. * * * Just a review on the record. * * * I'm not saying it won't cause an increase in the amount of judicial work in this state, but I never maintained that justice was cheap."[5]

Opponents of the proposal were very concerned that setting forth the contemplated standard of review would promote judicial fact-finding at the expense of the administrative process. Delegate Nord, speaking for the opposition, stated in debate on March 6, 1962:

"With the proposal that we have before us, Committee Proposal 95 * * *, it seems clear to me that we open the door for every single case, every determination by any administrative board, to be subjected to a review. Not just some cases, but every case. Because there are enough words in that last sentence to make it an easy thing for a lawyer to pick on one of them. Is the evidence reliable? That is a question of fact. That could be one way or the other. That could be reviewed. Is the evidence probative? Is it substantial? [Those kinds of questions would make it an automatic appealable case in every single case. And, if we have that, we have really lost the use of administrative procedure."

Persistent pleas by Delegate Nord and his fellow members of the opposition failed to persuade a majority that the proposal was unwise. The opposition's efforts to amend and strike significant portions of Proposal 95 failed and on March 6, 1962, the proposal was referred, intact, to the Committee on Styling and Drafting. After minor amend-

---

[5] The initial debate on this provision took the better part of two days and appears at 1 Official Record, Constitutional Convention 1961, pp 1440–1452, 1463–1478, 1483–1487. The above-quoted remarks appear in the Record as follows: Delegate Krolikowski, p 1444; Delegate Everett, p 1472; Delegate King, p 1473; and Delegate Nord, p 1468.

ment, the present text of here-pertinent provisions of art 6, § 28 was approved by an 86–32 vote of the Committee of the Whole on April 23, 1962.[6] The ultimate adoption of art 6, § 28 came on August 1, 1962.[7]

The cross-fire of debate at the Constitutional Convention imports meaning to the "substantial evidence" standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review.

### III

We turn now to apply the foregoing principles to

---

[6] One such amendment substituted the language "competent, material, and substantial evidence on the whole record" for the language of the original Proposal 95 ("reliable, probative, and substantial evidence on the whole record") in order to conform the language of the constitutional provision to the existing language of the administrative procedures act governing review of administrative fact-findings. The debate on April 23, 1962 is found at 2 Official Record, Constitutional Convention, 1961, pp 2712–2720.

[7] In its ultimate form, art 6, § 28, excepts Workmen's Compensation Commission findings and property tax agency findings from the application of constitutional "minimum" review. These exceptions are not here applicable.

the record before us. In so doing, our focus is upon what we perceive to be the critical issue: is the MERC Board's conclusion that the Symphony's failure to rehire plaintiff Chase was motivated by anti-union animus supported by substantial evidence?[8]

The trial examiner, in reaching a conclusion contrary to that of the MERC Board, stated:

"[T]he only question in this case is whether the refusal of the contract to· Chase on March 2, was motivated by animosity arising out of the activities of Chase on behalf of the Federation of Musicians. The record is devoid of any evidence of animosity toward Chase prior to March 2, 1968. As far as this record reveals, on February 29, the Symphony Orchestra was anxious to have the services of Chase as first trombonist. He was offered a contract, as were all the musicians, and upon his protest that he had been offered less than he deserved, the general manager agreed and offered Chase a $10.00 a week increase over the contract offer. The record reveals that such an increase was granted to only nine other employees in the Orchestra.

\* \* \*

"It is the absence of evidence of animosity toward Chase for any reason and the apparent willingness and anxiousness of the Symphony Orchestra to employ Chase on February 29, that militates most heavily against the contention that the March 2 refusal to allow Chase to sign the contract was discriminatorily motivated."

---

[8] A number of ancillary issues have been interjected into these proceedings. Some deal with interpretation of the Union-Symphony contract. Another involves the allegation that the Symphony refused to hire Chase because he was engaged in "individual bargaining" under the contract. Unfair labor practice charges were brought by plaintiff Chase, and MERC jurisdiction invoked, under § 16 of the labor mediation act, MCLA 423.16; MSA 17.454(17) pursuant to plaintiff's charge that he was discharged: " \* \* \* because he had engaged in Union and other protected concerted activities." We confine our discussion in this case to analysis of the only properly raised § 16 issue.

In disputing these conclusions the Board stated in part:

"The fact that Chase was offered a raise does not, *per se,* indicate that the Symphony was anxious to hire Chase. On the contrary, when it is remembered that other members of the orchestra had engaged in extensive individual negotiations in previous years and that Chase had not, the Symphony may have believed that the increase it offered to Chase would be rejected. Indeed, the Symphony's offer may have been calculated to generate a prompt rejection from Chase."

While the hearing examiner's analysis is based upon permissible inference from record evidence, the above statements of the Board are nothing but convoluted conjecture tantamount to speculation. As such, they do not support a finding of anti-union animus.

Beyond this, the Appeal Board finding of anti-union animus rests solely upon the Board's interpretation of certain conversations between plaintiff Chase and Sixten Ehrling, the conductor of the orchestra, who was instrumental in the Symphony's ultimate decision to employ another trombonist. The trial examiner and Board's differing views as to the "credibility" of these witnesses explain the divergence in their ultimate conclusions.[9]

Our reading of the cold record indicates that the finding of the trial examiner is more plausible than the finding of the Board. Given this reading,

---

[9] Plaintiff Chase recounted conversations with Ehrling from which it might be inferred that dismissal flowed from anti-union animus on the part of the Symphony. Ehrling's recollection of these conversations differed from that of Chase and Ehrling expressly commented that the decision not to rehire Chase was made for artistic reasons, having nothing to do with Chase's union activities. The crucial decision as to "credibility" of which we speak is that prerogative which permits the decision-maker confronted with conflicting testimony of a subjective nature to assign weight to, or find more inherently reliable, the testimony of a particular witness.

are we to ignore the determination as to credibility of the only decision-maker to hear testimony firsthand and, in effect, credit the contrary determination of the Board? We think not. The findings of the trial examiner are a part of the record we are entitled to consider in exercising our review power. In *Universal Camera Corp v National Labor Relations Board,* 340 US 474; 71 S Ct 456; 95 L Ed 2d 456 (1951), the United States Supreme Court, applying the Federal "substantial evidence" test under the National Labor Relations Act, similarly concluded that a reviewing court was entitled to consider examiner findings. We adopt as our own the following comments of that Court:

> "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. *We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.* The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial". (Emphasis supplied.) 340 US 474, 496–497.

Ascribing due weight to the unique opportunity of the trial examiner to weigh the testimony of witnesses, our reading of the cold record is confirmed. We conclude that the critical finding of the MERC Board is not supported by "substantial evidence".

Affirmed. No costs, a question of public significance being involved.

T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, and M. S. Coleman, JJ., concurred with J. W. Fitzgerald, J.

Williams and Levin, JJ., did not sit in this case.