CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD
COMPANY v PUBLIC SERVICE COMMISSION

1. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—APPEAL OF
      RIGHT—COURTS.

   Appeals from circuit court judgments reviewing orders of the
   Michigan Public Service Commission are as a matter of right.

2. ADMINISTRATIVE LAW—COURTS—FINDER OF FACT—EVIDENCE.

   The Court of Appeals must accord due deference to an adminis-
   trative agency's expertise and not invade the province of exclu-
   sive administrative fact-finding by displacing an agency's choice
   between two reasonably differing views where the agency's
   conclusion is supported by competent, material and substantial
   evidence on the record.

Appeal from Ingham, Donald L. Reisig, J. Sub-
mitted November 5, 1976, at Lansing. (Docket No.
26979.) Decided March 25, 1977.

Petition by Chicago, Milwaukee, St. Paul and
Pacific Railroad Company to the Michigan Public
Service Commission seeking permission to remove
the railroad's resident agent from the Amasa sta-
tion. Order entered denying permission to remove
the agent. Petitioner appealed to circuit court.
Circuit court reversed. Commission appeals. Re-
versed.

*George H. Wyatt* and *John G. Makris,* for plain-
tiff.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 774.
[2] 2 Am Jur 2d, Administrative Law § 747.

*Derengoski,* Solicitor General, and *Walter V. Kron* and *Don L. Keskey,* Assistants Attorney General, for defendant.

Before: DANHOF, C. J., and D. E. HOLBROOK, Jr., and M. J. KELLY, JJ.

PER CURIAM. The Michigan Public Service Commission (MPSC) appeals by right from an order of the Ingham County Circuit Court reversing an order of the Commission denying an application of the railroad to remove its resident agent from the Amasa station in the upper peninsula. *Attorney General v Michigan Public Service Commission,* 392 Mich 660, 664; 221 NW2d 299 (1974).

In its application the railroad proposed to remove the Amasa agent and provide users of the Amasa facilities with toll free telephone service to the Channing station, the next station along the line. This move was to effect a savings to the railroad of a disputed magnitude while, according to the railroad, providing its users with nearly the same service as they had received from the resident agent.

The significant facts are in dispute. The railroad claims that maintaining the Amasa agent is very costly and returns little in the way of revenue. The users dispute railroad accounting procedures and data interpretation in an attempt to establish the opposite. The railroad contends that removal of the agent will have little or no impact upon the quality of service delivered. The users predict chaos. In fact, all that is clear about this dispute is that there is no one clearly correct solution. Fortunately, the framers of the Constitution, in their significant wisdom, did not vest this Court with the authority or responsibility for finding the optimum answer in such a case. Rather, our task is to

determine if, on the whole record, the decision of the MPSC is supported by competent, material and substantial evidence. Const 1963, art 6, § 28. Where either of two alternatives may reasonably be deemed the "correct" solution to a dispute we must "accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views". *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).

This case necessarily involved addressing some very sophisticated quantitative and qualitative questions. The Commission was charged first with quantifying, from the disputed and voluminous record, the cost to the railroad of maintaining the Amasa agent and the cost, in terms of inconvenience and lost profits, to the consumers in removing the agent. It then faced the task of weighing these costs qualitatively to determine who could best bear the burden, the railroad or the public. At all times the Commission was required to bear in mind that to place too great a burden on the railroad could amount to a deprivation of due process rights while to place too great a burden on the public was to abrogate its duty to safeguard the public necessity and convenience. *Chicago & NW R Co v Public Service Commission,* 329 Mich 432, 444; 45 NW2d 520 (1951).

The MPSC hearing examiner prepared a proposed opinion which was subsequently adopted by the Commission. Their opinion concludes that the cost to the public of removing the agent at Amasa would be significant for a number of reasons, including unavailability of phones in the shipper's work areas, infeasibility of alternate transporta-

tion, inability of the Channing agent to allocate available cars equitably and dependency of the area's economy on the lumber industry, which, in turn, is dependent on reliable, inexpensive rail service.

In assessing the cost to the railroad, the examiner was required to determine which of two accountings was most representative of the true state of affairs. In doing so he determined that the Amasa agency generated a profit to the railroad. It is undisputed, however, that removal of the agent would realize a savings and therefore increase profits to the railroad.

The examiner ultimately concluded that the cost to the railroad of maintaining the station was significantly less than the cost to the public of removal. We find that each of the examiner's conclusions, qualitative and quantitative, is supported by competent, material and substantial evidence on the record and cited in his opinion. Deferring to the Commission's expertise in matters of railroad operation and financing, we must prefer its conclusions to those of the circuit court, however plausible and reasonable the circuit court's findings may appear. We conclude that the circuit court erred in finding that the opinion and order of the MPSC were not founded on competent, material and substantial evidence.

Reversed. No costs, a public question involved.