IN THE MATTER OF THE PETITION OF METROPOLITAN
COUNCIL 23, AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO

Docket No. 78-1196. Submitted February 5, 1979, at Detroit.—Decided
April 16, 1979. Leave to appeal applied for.

Metropolitan Council 23, American Federation of State, County
and Municipal Employees, AFL-CIO, is the labor representative
for 17 prosecutor's investigators in the Oakland County Prose-
cutor's Office. When it reached an impasse in negotiations with
Oakland County, the union petitioned the Michigan Employ-
ment Relations Commission for compulsory arbitration under
the compulsory arbitration of labor disputes in municipal police
and fire departments act. The Michigan Employment Relations
Commission determined that the investigators were subject to
the hazards of police officers and were, therefore, eligible to
invoke compulsory arbitration under the act. The Court of
Appeals hears the appeal of Oakland County as if by leave
granted. *Held:*

1. The Michigan Employment Relations Commission is autho-
rized to determine the eligibility of public employees for com-
pulsory arbitration under the compulsory arbitration of labor
disputes in municipal police and fire departments act.

2. Any Michigan Employment Relations Commission ruling
concerning the eligibility of public employees for compulsory
arbitration may be appealed to the Court of Appeals prior to
the commencement of arbitration by leave granted; where
leave is denied, the issue is preserved for appeal to the circuit
court after arbitration.

3. A bargaining unit of prosecutor's investigators is eligible
for compulsory arbitration under the compulsory arbitration of
labor disputes in municipal police and fire departments act
where the investigators are employees of any department of a

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 48A Labor and Labor Relations § 1773.
   Validity and construction of statutes or ordinances providing for
   arbitration of labor disputes involving public employees. 68
   ALR3d 885.
[4] 2 Am Jur 2d, Administrative Law § 722.

city, county, village or township and where they are engaged as policemen or subject to the hazards of police officers.

4. Appellate review of a decision of the Employment Relations Commission must be confined to examination of the record to ascertain whether the decision is supported by competent, material and substantial evidence and that it is not in violation of constitution or statute, and the Court of Appeals will substitute its judgment for that of the Commission only upon a clear showing of error.

Affirmed.

1. LABOR RELATIONS — STATUTES — MUNICIPAL EMPLOYEES — COMPULSORY ARBITRATION.

The Michigan Employment Relations Commission is authorized to determine the eligibility of public employees for compulsory arbitration under the compulsory arbitration of labor disputes in municipal police and fire departments act (MCL 423.231 *et seq.;* MSA 17.455[31] *et seq.).*

2. LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — APPEAL AND ERROR — STATUTES — COURT RULES.

Any Michigan Employment Relations Commission ruling concerning the eligibility of public employees for compulsory arbitration may be appealed to the Court of Appeals prior to the commencement of arbitration by leave granted; where leave is denied, the issue is preserved for appeal to the circuit court after arbitration (MCL 423.23[1], 432.242; MSA 17.454[25][1], 17.455[42], GCR 1963, 801.1).

3. LABOR RELATIONS — STATUTES — COMPULSORY ARBITRATION — PROSECUTOR'S INVESTIGATORS.

A bargaining unit of prosecutor's investigators is eligible for compulsory arbitration under the compulsory arbitration of labor disputes in municipal police and fire departments act where the investigators are employees of any department of a city, county, village or township and where they are engaged as policemen or subject to the hazards of police officers (MCL 423.231 *et seq.;* MSA 17.455[31] *et seq.).*

4. APPEAL AND ERROR — ADMINISTRATIVE LAW — EMPLOYMENT RELATIONS COMMISSION — EVIDENCE — RECORD.

Appellate review of a decision of the Employment Relations Commission must be confined to examination of the record to ascertain whether the decision is supported by competent, material, and substantial evidence and that it is not in violation of constitution or statute, and the Court of Appeals will

substitute its judgment for that of the Commission only upon a clear showing of error.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards* and *Jon M. DeHorn,* Assistants Attorney General, for the Michigan Employment Relations Commission.

*A. Russell Messina,* Assistant Oakland County Civil Counsel, for Oakland County.

*Zwerdling & Maurer,* for Metropolitan Council 23, American Federation of State, County and Municipal Employees, AFL-CIO.

Before: DANHOF, C.J., and BRONSON and BEASLEY, JJ.

DANHOF, C.J. Appellee, Metropolitan Council 23, American Federation of State, County and Municipal Employees, AFL-CIO, is the labor representative for a bargaining unit composed of 17 prosecutor's investigators in the Oakland County Prosecutor's Office.[1] In April, 1977, appellee and appellant Oakland County reached an impasse in their negotiations for a labor contract. The union thereupon wrote to the Michigan Employment Relations Commission (MERC), requesting submission of the contract dispute to a compulsory arbitration panel pursuant to MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.,* 1969 PA 312, the compulsory arbitration of labor disputes in municipal police and fire departments act (hereinafter referred to as Act 312). Oakland County responded that its prosecutor's investigators were not police officers within the

_____

[1] The prosecutor's investigators were hired pursuant to the authority granted by MCL 49.31; MSA 5.791.

purview of Act 312 and could not invoke compulsory arbitration.

On October 6, 1977, MERC held a hearing to determine whether the prosecutor's investigators' bargaining unit was subject to the provisions of Act 312. In an opinion and order issued on March 8, 1978, MERC found that the unit was eligible for compulsory arbitration. Oakland County filed an appeal as of right from this decision.

Prior to addressing the substantive issues raised, we must first discuss whether MERC had the authority to determine the applicability of Act 312 to the Oakland County prosecutor's investigators and, if so, the proper method of appealing that decision.

Act 312 defines those employees eligible for compulsory arbitration, MCL 423.232; MSA 17.455(32), but does not specify whether MERC or the courts should have initial authority to decide which employees fall within that definition. However, Act 312 does provide that any requests for compulsory arbitration are to be submitted to MERC, and that MERC is the agency legislatively authorized to supervise the compulsory arbitration process. MCL 423.233 et seq.; MSA 17.455(33) et seq.

In addition, the Legislature specifically intended to afford public employees within the scope of Act 312 "an alternate, expeditious, effective and binding procedure for the resolution of disputes", thus averting the possibility of a strike by essential public servants. (Emphasis supplied.) MCL 423.231; MSA 17.455(31). This legislative intent would be ill-served by imposing the lengthy delays inherent in initial court review and resolution of the scope of Act 312. We find that MERC has the necessary implied authority and expertise in labor relations

to initially determine the eligibility of public employees for compulsory arbitration. See *Oakland County Sheriff's Dep't,* 1977 MERC LO 843.

As for the proper method of seeking review of such a MERC decision, Act 312 is also silent. We may look for some indication of legislative intent in the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* which is *in pari materia* with Act 312. MCL 423.244; MSA 17.455(44). However, in its present posture, the dispute before us involves neither the mediation of a grievance within the scope of MCL 423.207; MSA 17.455(7), nor the resolution of an unfair labor practice charge, MCL 423.216; MSA 17.455(16).

We therefore turn to the labor mediation act, MCL 423.1 *et seq.;* MSA 17.454(1) *et seq.,* for guidance. Although this act governs labor relations only in the private sector, it is nevertheless instructive in the absence of any legislative directive specifically pertaining to the public sector. MCL 423.23(10); MSA 17.454(25)(1) provides that, except for MERC decisions concerning unfair labor practices, all MERC rulings and orders "shall be reviewable only by the supreme court and on petition for writ of certiorari or such other process as may be appropriate". By virtue of GCR 1963, 801.1, the above-mentioned MERC rulings and orders should now be appealed to the Court of Appeals rather than to the Supreme Court.

We conclude that any MERC ruling concerning the eligibility of public employees for compulsory arbitration may be appealed prior to the commencement of arbitration by filing for leave to appeal in this Court. If leave is granted, this Court will fully review MERC's decision. If leave is denied, the parties must submit the dispute to arbi-

tration according to the procedures outlined in Act 312. The issue of the arbitration panel's jurisdiction over the parties under Act 312 may then be raised, along with an attack on the award itself, in an appeal to the appropriate circuit court. MCL 423.242; MSA 17.455(42).

We now turn to the merits of the instant controversy.[2] The statutory standard for determining the applicability of compulsory arbitration is as follows:

"Sec. 1. It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed." MCL 423.231; MSA 17.455(31).

"Sec. 2. (1) Public police and fire departments means any department of a city, county, village, or township having employees engaged as policemen, or in fire fighting or subject to the hazards thereof, emergency medical service personnel employed by a police or fire department, or an emergency telephone operator employed by a police or fire department." MCL 423.232(1); MSA 17.455(32)(1).

In order to invoke compulsory arbitration, members of a bargaining unit must, according to MCL 423.232(1), be employees of "any department of a city, county, village or township". The prosecutor's investigators here involved fulfill this requirement in that they are all employed by the Prosecutor's Office of defendant Oakland County. Compare *Ypsilanti Police Officers Association v Eastern Michi-*

---

[2] Defendant herein filed a claim of appeal as of right. Since neither the parties nor this Court noted the jurisdictional problem at the time of filing, we will treat this case as if leave to appeal had been granted.

*gan University,* 62 Mich App 87; 233 NW2d 497 (1975).

Act 312 also provides that the employees must be "engaged as policemen * * * or subject to the hazards thereof". MCL 423.232(1). Both plaintiff union and MERC argue that if the duties performed by prosecutor's investigators fall within the scope of this language, then Act 312 is applicable. Defendant, however, contends that implicit in the legislative intent inspiring Act 312 is the further requirement that covered employees perform functions critical to maintaining public order and safety.

In support of its contention, defendant points to statements made by this Court in *Lincoln Park Detention Officers v City of Lincoln Park,* 76 Mich App 358; 256 NW2d 593 (1977). It was there asserted that compulsory arbitration statutes are generally limited to critical public employees, and that such statutes are aimed at preventing work stoppages by certain public employees whose absence could threaten the safety of the entire community. *Detention Officers, supra,* at 364-365. While we agree with the above statements, we note that they were made in the context of distinguishing nonessential police department *employees,* who were held to be outside the scope of Act 312, from *police officers.* Rather than setting up a dichotomy between critical and noncritical police officers, this Court affirmed that the sole statutory precondition for invoking Act 312, other than employment by a municipal or county department, is that the employees be "either police officers or those subject to the hazards of police officers". *Detention Officers, supra,* at 366. See also *Oakland County Sheriff's Dep't, supra.* MERC thus applied the correct statutory standard in its decision below.

The remaining question is whether the evidence adduced at the MERC hearing supports MERC's ruling that the Oakland County prosecutor's investigators are "subject to the hazards of police officers". This Court will not reverse MERC's decision if it is supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28. See also *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96, 101-102; 204 NW2d 218 (1973), *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121-124; 223 NW2d 283 (1974), *Local 547, International Union of Operating Engineers, AFL-CIO v Ford Hospital,* 59 Mich App 625, 628-629; 229 NW2d 925 (1975).

At the MERC hearing, two Oakland County prosecutor's investigators testified to the nature of their employment. The Prosecutor's Office employs 17 investigators assigned to four divisions: An Organized Crime Strike Force (17 employees); a Welfare Fraud Division (4 employees); a Criminal Investigation Division (5 employees); and a Consumer Fraud Division (1 employee).

As their title implies, prosecutor's investigators conduct investigations into and surveillance of various aspects of criminal misconduct in Oakland County. Fifteen of the investigators have prior police experience and are deputized by the Oakland County Sheriff's Department.

While performing their duties, the investigators are required by oral order of their supervisor, the Chief Criminal Investigator of the Prosecutor's Office, to carry weapons at all times. Various investigators have, on occasion, been required to use their weapons in the course of their duties, have had guns trained on them, and have suffered injury in the performance of their duties. During

certain particularly hazardous assignments, investigators have been wired with one-way transmitters. Investigators are also on call at all times.

As a result of their investigations, the investigators make arrests, handle booking and "mugging" of prisoners, and prepare arrest reports. One witness testified that during the first nine months of 1977, the investigators had made 190 arrests.[3]

Investigators from the prosecutor's office work with and are used interchangeably with state police officers in the performance of certain investigative assignments, particularly those involving organized crime and narcotics law enforcement. Investigators also occasionally work with local police departments.

Although neither witness at the hearing specifically explained the duties of investigators in the Welfare Fraud and Consumer Fraud Divisions, there was testimony that, with the exception of the two nondeputized individuals, all of the investigators could transfer among the four divisions. Even so, within their own divisions, the two nondeputized investigators performed assignments not varying significantly in scope from those of deputized investigators.[4]

As summarized above, the evidence adduced at

---

[3] The breakdown of the arrests by category of crime involved was as follows:

"In narcotics related arrests, there were 101; conspiracy to burn real property, there were five; arson, one; burn [sic] insured property, there were three; fraud, there were three; obtaining money under false pretenses, there were thirteen; violation of the State usery laws, two; accepting earnings of a prostitute, three; * * * [p]andering, one; aggravated assault, one; ticket scalping, one; unlawfully driving away an automobile, one; receiving and concealing property over one hundred dollars, ten; aiding and abetting and carrying a pistol, one; failure to enforce the law, two; embezzlement, two; larceny over one hundred dollars, two; fail [sic] to register firearms, one; welfare fraud and criminal non-support, thirty-seven."

[4] The two nondeputized investigators were assigned to the Welfare Fraud and the Criminal Investigation Divisions.

the MERC hearing substantially supports MERC's conclusion that the investigators are subject to the same hazards confronting police officers and may invoke compulsory arbitration under Act 312.

Finally, we briefly dispose of defendant's contention that the statutory definition of employees eligible for compulsory arbitration, MCL 423.232(1); MSA 17.455(32)(1), is so vague as to deprive defendant of due process of law. Defendant argues that the phrase "or subject to the hazards thereof" is not sufficiently comprehensible by persons of common intelligence and invites arbitrary, discriminatory application.

The "void for vagueness" doctrine was primarily developed within the context of penal statutes and of laws threatening infringement of individuals' First Amendment rights. See, *e.g., Grayned v City of Rockford,* 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972), *People v Miller,* 78 Mich App 336; 259 NW2d 877 (1977). The compulsory arbitration procedure falls within neither category. Furthermore, the phrase about which defendant complains is sufficiently precise to be understood, interpreted and applied by persons of common intelligence.

The MERC ruling is affirmed. No costs, a public question involved.