GRABLE v CITY OF DETROIT

1. DOMICILE—RESIDENCE—FAMILY RESIDENCE.

The residence of one's family is relevant to the determination of one's residence but it is not the sole determining factor; it is possible for a married man to establish residence apart from that of his family.

2. DOMICILE—RESIDENCE—INTENT.

The determination of domicile or residence is essentially a question of intent which is to be decided after careful consideration of relevant facts and circumstances.

3. DOMICILE—RESIDENCE—FIREMEN—FAIR HEARING—EVIDENCE.

A fireman for the City of Detroit is entitled to a fair hearing before he can be discharged for a failure to maintain his residence in the city because at a fair hearing the fireman might well be able to adduce such evidence as will prove his residence within the city.

4. DOMICILE—RESIDENCE—FIREMAN—PERSONAL HARDSHIP—WAIVER.

Personal hardship factors must be considered by the Detroit Civil Service Commission in determining whether to grant a waiver allowing a nonresident fireman to continue working for the city; it may well be in the best interests of the city to retain some employees whose personal difficulties prevent moving into the city (Detroit City Ordinance 327-G,1, sec. 2-1-1.3).

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 April 12, 1973, at Detroit (Docket No. 13466.) Decided July 23, 1973.

Complaint by Dale Grable and the Detroit Fire Fighters Association, Local 344, I.A.F.F., against

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Domicil § 4 et seq.
[3, 4] 25 Am Jur 2d, Domicil § 97.
    63 Am Jur 2d, Public Officers and Employees §§ 47, 48.

the City of Detroit, its civil service commission, and its civil service commissioners and secretary, for a declaratory judgment that a civil service hearing relative to residency was improperly conducted, and for an injunction and temporary restraining order. Judgment for defendants. Plaintiffs appeal. Reversed and remanded with instructions.

*Armand D. Bove* and *John A. O'Leary,* for plaintiff Grable.

*Michael M. Glusac,* Corporation Counsel, and *John R. McKinlay* and *Victor G. Marrocco,* Assistants Corporation Counsel, for defendants.

Before: BRONSON, P. J., and R. B. BURNS and VAN VALKENBURG,* JJ.

BRONSON, P. J. Plaintiff, Dale Grable, was a fireman for the City of Detroit until May 27, 1972, when that position was vacated by order of the Board of Fire Commissioners. Plaintiff was dismissed from his position because he was not a resident of the City of Detroit.

On May 17, 1968 the Detroit Common Council passed Ordinance 327-G, § 1, which provides:

"Section 2-1-1.2. Residence shall be construed to be the actual domicile of the individual where he normally eats and sleeps and maintains his normal personal and household effects.

"Section 2-1-1.3. All police officers, appointees in the unclassified service, except the director of the zoo and superintendent of the House of Correction, and all persons working in any branch of the classified service of the city shall reside in the City of Detroit. The Civil

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Service Commission may waive the residency requirement for employment in the classified service upon a finding that such waiver would serve the best interest of the city. When waiving the residency requirement, the Civil Service Commission shall base their determination upon:

"(1) The nature of the work.

"(2) The location of the work, and

"(3) All other pertinent facts concerning employment.

"The commission shall promptly report any waiver of residency requirement to the Mayor and the Common Council."

In October, 1970, the Civil Service Commission adopted detailed procedures for the implementation and enforcement of these residence requirements. On or about August 14, 1970 the Detroit Fire Department requested the Detroit Civil Service Commission to investigate the matter of plaintiff's residency.

In April, 1971 the commission sent plaintiff a letter notifying him that a hearing relative to his residency would be held on April 21, 1971. The letter stated that the commission had obtained evidence that the plaintiff was a nonresident.

On April 21, 1971 the hearing officer determined that since plaintiff's family did not reside with him in the City of Detroit, he was not a resident within the meaning of the ordinance. On April 27, 1971 the Civil Service Commission met and adopted the findings of the hearing officer. They issued an order requiring plaintiff to establish residency in the City of Detroit within 60 days or have his position vacated.

On June 24, 1971 plaintiff, in conjunction with the Detroit Fire Fighters Association, filed suit in circuit court seeking relief from the order, asking for a declaratory judgment, injunction and tempo-

rary restraining order. On October 20, 1971 judgment was entered for defendants. Plaintiff was given 60 days in which to establish residency. Prior to the expiration of that 60-day period, the Board of Fire Commissioners granted plaintiff Grable a 60-day extension to May 10, 1972 to establish proof of residence for himself and his family within the City of Detroit. Plaintiff did not comply. The Board of Fire Commissioners issued an order dated May 25, 1972 vacating his position as of May 27, 1972.

Plaintiff appeals from the adverse ruling of the circuit court. He does not question the validity of the residency requirement. He does, however, question the standards used by the hearing officer to determine residency and the fairness of the hearing. Plaintiff also raises several constitutional issues which we need not consider here.

First, plaintiff argues that the hearing officer's interpretation of the residency requirement violates several constitutional guarantees and rules of statutory construction. The hearing officer made it quite clear that plaintiff could not meet the residency requirement unless his wife and family lived in Detroit, regardless of where plaintiff lived. The hearing officer stated at the outset of the hearing:

"[T]he rules and requirements of the City Charter and this Commission are that you be a resident of Detroit and that your family live there with you."

His final determination was based on the following:

"There's nothing in question about those circumstances. The family's outside and he's inside. We're not even questioning that. We're suggesting that he bring the family inside with him, and that he move back within 60 days."

The Civil Service Commission followed the hearing officer's recommendations and ordered plaintiff's position declared vacant. In a letter to plaintiff the commission stated the basis for its determination:

*"It having been reported and determined that you are not maintaining your residence with that of your family within the City of Detroit as required by the City's regulations relative to residence of city employees,* and that it was agreed that your family would move into the City of Detroit with you to conform with the City's requirements, the Civil Service Commission took action at its meeting of April 27, 1971 declaring that your position as Firefighter in the Detroit Fire Department be declared vacant if you have not corrected your residence to conform with the City's requirements within 60 days in accordance with the above stated agreement."

The circuit court held that:

"It is a logical extension of the principle of the *D.P.O.A.* case *[Detroit Police Officers Ass'n v Detroit,* 385 Mich 519; 190 NW2d 97 (1971)], to hold, as this Court does today, that a fire fighter is not effectively a resident of the city when his family resides elsewhere."

Although we agree that the residence of one's family is relevant to the determination of one's residence, it is not the sole determining factor. It is not impossible for a married man to establish residence apart from that of his family. This Court cited with approval in *In re Fox Estate,* 3 Mich App 501, 509; 142 NW2d 866, 870 (1966), the following language:

" 'Domicile is so essentially a question of intent, depending on the facts and circumstances of each particular case, that precedents, with necessarily varying facts, are of slight assistance; a fact of controlling

importance in one case may have but slight significance in relation to all the facts of another, the determination of the place of domicile depending on the circumstances of each case. Proof of domicile, therefore, does not depend on any particular fact, but on whether all the facts and circumstances taken together tend to establish it; and all acts indicative of purpose must be carefully scrutinized.' 28 CJS, Domicile, § 18, p 41. (Footnotes omitted.)"

We reiterate: the determination of domicile or residence is essentially a question of intent which is to be decided after careful consideration of relevant facts and circumstances. This determination was not made in the case at bar. It was error for both the Civil Service Commission and the circuit court to rely solely on the residence of plaintiff's family in determining plaintiff's residence.

Plaintiff also alleges that he did not receive a fair hearing before being terminated. The only hearing that plaintiff was allowed was before a representative of the Civil Service Commission. His position was declared "vacant" by the Civil Service Commission. After the circuit court opinion, the Civil Service Commission realized that it had no power to fire plaintiff. So the Fire Department then fired plaintiff. The city now refers to this hearing as merely an evidentiary hearing to gather evidence against plaintiff.

The city here argues that the hearing afforded plaintiff was "informal". The hearing officer opened the proceedings with the following statement:

"Well, Mr. Grable, we have evidence that you do not live in the City of Detroit, and the rules and requirements of the City Charter and this Commission are that you be a resident of Detroit and that your family live

there with you. Do you want to tell us anything about the circumstances?"

The city presented no evidence. The entire hearing centered on plaintiff's attempt to explain why his family could not move into Detroit. The hearing contravened the due process standard set out in *Napuche v Liquor Control Commission,* 336 Mich 398; 58 NW2d 118 (1953).

The hearing officer was certainly not an unbiased fact finder. See *Johnson v Michigan Marketing Board,* 295 Mich 644; 295 NW 346 (1940). He conducted an accusatory proceeding in which he told plaintiff that he did not maintain his residence in Detroit and then asked him when he intended to move his family into Detroit.

The learned trial judge ruled that since there was no dispute as to the facts, the issue of the fairness of the hearing is moot. We do not agree. Plaintiff is entitled to a fair hearing before he can be discharged. *Schware v Board of Bar Examiners,* 353 US 232; 77 S Ct 752; 1 L Ed 2d 796 (1957).

At a fair hearing plaintiff might well be able to adduce such evidence as will prove his residence within the City of Detroit. This is especially true in light of our holding that the residence of plaintiff's family is not determinative.

Finally plaintiff argues that *personal hardship* constitutes a valid basis for waiver of the residency requirement. The hearing officer specifically refused to consider this factor, stating that the Civil Service Commission rules had recently been amended to reflect the fact that the commission would not consider personal hardship as a basis for a waiver.

City Ordinance 327-G, § 1, section 2-1-1.3 states:

"Section 2-1-1.3. All police officers, appointees in the

unclassified service, except the director of the zoo and superintendent of the House of Correction, and all persons working in any branch of the classified service of the city shall reside in the City of Detroit. The Civil Service Commission may waive the residency requirement for employment in the classified service upon a finding that such waiver would serve the best interest of the city. When waiving the residency requirement, the Civil Service Commission *shall* base their determination upon:

"(1) The nature of the work.

"(2) The location of the work, and

"(3) *All other pertinent facts concerning employment.*" (Emphasis added.)

The Civil Service Commission adopted Rule VII to implement this ordinance:

"All persons in any branch of the City service shall reside in the City of Detroit. The Commission may waive the residency requirement for employment in the classified service if it finds that such waiver would serve the best interests of the City. The findings and determination of the Commission shall be based on work related factors and shall be uniform as to each kind of work or occupation."

The circuit court held that the Civil Service Commission acted properly within its discretion when it determined never to consider personal hardship when determining if a waiver should be granted. We disagree.

The city council has provided for a waiver of the residency requirement. In determining whether to waive the requirement, "the Civil Service Commission *shall* base their determination upon: * * * (3) all other pertinent facts concerning employment". Justice WILLIAMS, in a minority opinion in *DPOA v Detroit,* 385 Mich 519; 190 NW2d 97, 104 (1971), interpreted this section at page 535:

"The civil service commission in considering a waiver can also consider the nature of the employee's work and 'all other pertinent facts considering employment.' This language on its face gives broad discretion to the civil service commission to inquire into the circumstances of each individual case, location of work being only one of these circumstances, and arrive at a solution that will genuinely 'serve the best interest of the city.' Such an inquiry can, for example, balance the benefits obtained to the city by the retention of a competent, industrious employee who, due to some family hardship, is forced to live across the municipal line, against the assumed detriment of his outside residence if a waiver would serve the best interest of the city, it is granted to an employee of the classified service."

We hold that even though the "best interest of the city" is paramount, personal hardship factors must be considered by the Civil Service Commission in determining whether to grant a waiver. It may well be in the best interests of the city to retain some employees whose personal difficulties prevent moving into the city within 60 days. The hearing officer and the Civil Service Commission refused to consider this issue in plaintiff's case. Since we have already required a new hearing, this issue will be considered at that new hearing. Reversed and remanded for proceedings not inconsistent with this opinion.

All concurred.