## MASTERS v CITY OF HIGHLAND PARK

### OPINION OF THE COURT

1. APPEAL AND ERROR—ADMINISTRATIVE LAW—CONSTITUTIONAL LAW.

     All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, are subject to direct review by the courts as provided by law; this review shall include, as a minimum, a determination whether such final decisions, findings, rulings and orders are authorized by law, and in cases where a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. APPEAL AND ERROR—ADMINISTRATIVE LAW—REVIEW—EVIDENCE.

     A judicial review of an administrative decision to determine whether it is supported by competent, material and substantial evidence on the whole record considers the whole record, not just those portions supporting the findings of the administrative agency; such a review does not attain the status of *de novo* review, but necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by the agency.

3. ADMINISTRATIVE LAW—CIVIL SERVICE BOARDS—PROCEEDINGS—BURDEN OF PROOF—EMPLOYERS—EMPLOYEES.

     Proceedings before a civil service board are adversary in nature,

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 550.
[2] 2 Am Jur 2d, Administrative Law § 747.
[3] 15A Am Jur 2d, Civil Service §§ 68, 71.
[4] 25 Am Jur 2d, Domicil § 85.
[5, 6] 25 Am Jur 2d, Domicil § 4.
[7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 247, 248.
[8] 15A Am Jur 2d, Civil Service §§ 28, 68.
[9] 15A Am Jur 2d, Civil Service § 481.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 266, 267.

with the employer cast in the role of a plaintiff seeking the discharge of a defendant employee; the employer initially carries the burden of proof to establish a prima facie case of violation of employment rules or regulations by the employee with competent, material and substantial evidence.

4. DOMICILE—RESIDENCE—FAMILY RESIDENCE.
   The residence of one's family is relevant to the determination of one's residence but it is not the sole determining factor; it is possible for a married man to establish residence apart from that of his family.

5. DOMICILE—RESIDENCE—INTENT.
   The determination of domicile or residence is essentially a question of intent which is to be decided after careful consideration of relevant facts and circumstances.

6. WORDS AND PHRASES—RESIDENCE—INTENT.
   The term "residence" means the place where one resides, an abode, a dwelling or habitation, especially a settled or permanent home or domicile; the term embraces both fact and intention.

7. MUNICIPAL CORPORATIONS—RESIDENCY—EMPLOYEES.
   A city-employer may not rely on an employee's non-residency following his discharge from employment to justify that discharge on the basis of prior alleged non-residency.

8. MUNICIPAL CORPORATIONS—EMPLOYEES—RESIDENCE—DISCHARGE—EVIDENCE—CIVIL SERVICE BOARD.
   Competent, material and substantial evidence on the whole record does not sustain a civil service board's decision to discharge a city's employee for alleged non-compliance with the city's residence requirements where testimony favorable to the employee indicates that he testified under oath that he lived in the city, paid telephone and electric bills for his apartment there, shopped there, paid his income taxes there, voted and obtained his drivers license there, paid city taxes at the resident rate, paid county taxes for his apartment building in the city, and where several witnesses including residents of the apartment building where the employee claimed he resided and the employee's wife testified that he lived in the city.

CONCURRENCE IN PART AND DISSENT IN PART BY BEASLEY, J.

9. APPEAL AND ERROR—ACCRUED BACK WAGES—RESIDENCY—MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—SUFFICIENT EVIDENCE.
   *Accrued back wages should not be awarded to an employee*

*discharged from municipal employment due to alleged non-residency within the city where he is employed, where on appeal the Court of Appeals reverses the civil service board's findings of non-residency due to a lack of sufficient evidence in the record to support the findings.*

Appeal from Wayne, Thomas Roumell, J. Submitted June 20, 1977, at Detroit. (Docket No. 29872.) Decided October 11, 1977. In lieu of leave to appeal, affirmed, 402 Mich —.

Complaint by Bruno M. Masters in circuit court against the City of Highland Park, the Civil Service Board of Highland Park and Highland Park General Hospital seeking to overturn a determination of the Civil Service Board which affirmed the dismissal of the plaintiff by his superiors for failure to maintain residence within the city as required by the city charter. Judgment for defendants. Plaintiff appeals. Reversed.

*Murdoch J. Hertzog,* for plaintiff.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

V. J. BRENNAN, J. This case arose from the August 18, 1972, discharge from employment of plaintiff Bruno Masters after 22 years of service with defendant Highland Park General Hospital Maintenance Department. The reason for the discharge was alleged non-compliance with the city's residence requirements. The discharge was upheld by the Highland Park Civil Service Commission, and that decision was upheld by Wayne County Circuit Court Judge Thomas Roumell in a November 26, 1975, opinion. Judge Roumell also denied plaintiff's motion for a new trial or rehearing. Plaintiff appeals as of right. GCR 1963, 806.1.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Following his discharge, plaintiff sought a hearing before the civil service board. He was granted a hearing September 11, 1972. Further testimony was taken November 20, 1972, at which time the board voted to uphold plaintiff's discharge. Plaintiff was represented by counsel. Plaintiff then brought suit in circuit court seeking a review of the board's decision.

Wayne County Circuit Court Judge George Martin subsequently ordered a rehearing of the earlier meetings so that proceedings could be recorded and the court would have an adequate basis for review.

The board met April 9, 1973, for the rehearing. Over objections of plaintiff's counsel, the board read the old notes into the record. Then the board prepared to receive new evidence. Plaintiff's counsel requested an adjournment and left the meeting.

Plaintiff was then asked if he wished to continue without an attorney. He replied, "No", and left the hearing room. The board, despite the absence of plaintiff and plaintiff's counsel, proceeded to consider new evidence not presented at the earlier hearings.

The additional evidence included the testimony of a private investigator, Dissette, who reported that his surveillance indicated plaintiff lived in Troy, Michigan, and not Highland Park. However, this surveillance took place in November and December, 1972, and January, 1973, after plaintiff had been discharged.

Carol Masters, former daughter-in-law of plaintiff, testified from excerpts of a child custody hearing in which plaintiff's son said that he often stayed with his parents at their home in Troy and occasionally stayed at a Highland Park apartment

building owned by his father. She also referred to testimony of Patricia Makled, a resident of the apartment building owned by plaintiff in Highland Park, which indicated that Mrs. Makled did not know if plaintiff lived there.

The board reaffirmed plaintiff's discharge, and the matter was then returned to circuit court, where a rehearing was denied. The case was argued before Judge Roumell, who affirmed the decision of the civil service board and dismissed plaintiff's complaint.

On appeal, plaintiff brings several allegations of error. We need address only one of them.

Plaintiff contends that the decision of the defendant civil service board was not supported by competent, material and substantial evidence.

Plaintiff was discharged for violating Highland Park residency requirements. The provision he was accused of violating states:

"Sec. 7-20 *Residence of city employees.*—All employees of the city shall be and remain residents of the city or shall become residents of the city within 6 months following the completion of their probationary period. When suitable applicants cannot be obtained after reasonable and serious recruitment efforts of un-classified personnel in the city hospital, the residency rule may be waived. It shall be the duty and responsibility of the board of directors of the hospital to continuously strive to encourage un-classified non-residents to live within the corporate limits of the city. Residents shall always be accorded preference in city employment and advancement policies. Any elected or appointed official of the city who violates this section shall be subject to immediate dismissal and subject to any fine or imprisonment for charter violation as prescribed by law. When the status of the work on [of] an employee is at a place which is outside the territorial limits of the city and the nature of his work is such that he is required to and does live on city property at the place

of his work, and when such fact is certified to the civil service board by the department or agency by which he is employed, the provisions of this section shall be waived as to such employee."

Three hearings were held on plaintiff's dismissal before the Highland Park Civil Service Board. Each time plaintiff's discharge was upheld. Plaintiff contends that the decision of the civil service board was not supported by competent, material and substantial evidence on the whole record. We agree.

The Michigan Supreme Court noted the following scope of review for administrative decisions in *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96, 101; 204 NW2d 218 (1973):

"The proper scope of review of an opinion of an administrative agency is controlled both by constitution and statutory provision. Article 6, § 28 of the 1963 Constitution provides:

" 'All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.' "

What the Supreme Court means by "competent, material and substantial evidence on the whole record" was determined in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974):

"The cross-fire of debate at the Constitutional Convention imports meaning to the 'substantial evidence' standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency."

The provision of the Highland Park city charter which the plaintiff was accused of violating dictates that all employees of the city shall be and remain residents of the city. However, nothing appears definitively in the record to indicate the meaning of "residence" within the contemplation of the charter provision.

This situation is in contrast to Detroit Ordinance 327-G, § 1; § 2-1-1.2, part of the Detroit employees' residency provision, which states:

"Residence shall be construed to be the *actual domicile* of the individual where he normally eats and sleeps and maintains his normal personal and household effects." (Emphasis added.)

Thus, Detroit has by statute made the terms "residence" and "domicile" synonymous. What meaning was intended by the Highland Park city charter is difficult to determine, though when asked what constituted residency, the board's secretary stated that one court had "determined that it is where a person lives with his family".

We recognize that proceedings before the civil service board are adversary in nature, with the employer cast in the role of plaintiff seeking the

discharge of defendant-employee. Therefore, plaintiff-employer initially carries the burden of proof to establish a prima facie case of violation by defendant-employee. As defined by the Supreme Court, the violation must be established by competent, material and substantial evidence.

Vagueness of the Highland Park charter provision leaves us uncertain as to exactly what the city was required to prove in the present case. Much depends upon the definition given to "residence".

The residency standard suggested by the board's secretary in the instant case was rejected in *Grable v Detroit,* 48 Mich App 368, 372–373; 210 NW2d 379 (1973). In that case, the circuit court had held that a fire fighter is not effectively a resident of the city when his family lives elsewhere. This Court reversed, stating:

"Although we agree that the residence of one's family is relevant to the determination of one's residence, it is not the sole determining factor. It is not impossible for a married man to establish residence apart from that of his family. This Court cited with approval in *In re Fox Estate,* 3 Mich App 501, 509; 142 NW2d 866, 870 (1966), the following language:

" ' "Domicile is so essentially a question of intent, depending on the facts and circumstances of each particular case, that precedents, with necessarily varying facts, are of slight assistance; a fact of controlling importance in one case may have but slight significance in relation to all the facts of another, the determination of the place of domicile depending on the circumstances of each case. Proof of domicile, therefore, does not depend on any particular fact, but on whether all the facts and circumstances taken together tend to establish it; and all acts indicative of purpose must be carefully scrutinized." 28 CJS, Domicile, § 18, p 41. (Footnotes omitted.)'

"We reiterate: the determination of domicile or resi-

dence is essentially a question of intent which is to be
decided after careful consideration of relevant facts and
circumstances. This determination was not made in the
case at bar. It was error for both the Civil Service
Commission and the circuit court to rely solely on the
residence of plaintiff's family in determining plaintiff's
residence."

What standard are we then to apply to this
case? Residence has been defined as a factual place
of abode or living in a particular place:

"Residence means the place where one resides; an
abode, a dwelling or habitation; especially, a settled or
permanent home or domicile. Residence is made up of
fact and intention." *Reaume & Silloway, Inc v Tatzlaff,*
315 Mich 95, 99; 23 NW2d 219 (1946), citing *Wright v
Genesee Circuit Judge,* 117 Mich 244, 245; 75 NW 465
(1898). See also *Loeser v Jorgenson,* 137 Mich 220, 223;
100 NW 450 (1904), *Beecher v Common Council of
Detroit,* 114 Mich 228, 229–230; 72 NW 206 (1897).

What was the evidence on which the board relied
in approving the dismissal of plaintiff, and on
which the trial court relied in affirming the action
of the board?

We would note immediately that testimony of
investigator Dissette appeared concerning surveil-
lance of plaintiff during November and December
of 1972, and January of 1973. The problem is that
this evidence is not material to the August 18,
1972, discharge of plaintiff. The city cannot rely on
plaintiff's non-residency following his discharge to
justify that discharge on the basis of prior alleged
non-residency.

However, proper evidence at the first hearing
indicated that plaintiff was listed as the owner of
the Troy property. Yet, plaintiff was as well the
owner of the Highland Park apartment building

where he claimed to reside. Proof of plaintiff's ownership of the Troy property does not alone present substantial evidence that he "resided" in Troy.

On the other hand, plaintiff himself testified at this first hearing that he lived at 24 Stevens in Highland Park. He said he owned a home in Troy, but was separated from his wife and she was living in the Troy home. Plaintiff presented telephone and electric bills for the Stevens address which were in his name. He also stated that he paid Highland Park taxes at the resident rate and that county taxes are in his name for the 24 Stevens property. Contrary to testimony by witness Carol Masters, his former daughter-in-law who was engaged in a bitter divorce proceeding with plaintiff's son and whose testimony is at best suspect, plaintiff denied that he ever told an Oakland County court that he lived in Troy.

Plaintiff's wife testified the couple had bought the Troy home as an investment. She testified to moving there on her doctor's advise, but stated that her husband remained in Highland Park because of his job. She said plaintiff lived at 24 Stevens, Highland Park, and had not lived with her for 2-1/2 years.

At the second hearing, Michael Masters testified that the allegations concerning plaintiff's residence in Troy were made in Oakland County court by his former wife Carol. Contrary to her claim, Masters stated his father, under oath, had given his address in that proceeding as 24 Stevens, Highland Park. Witness Bob Boltz also testified at this hearing that to the best of his knowledge plaintiff lived at 24 Stevens and said he had called him from work many times at that address. Pat Makled, a resident of 26 Stevens, stated that she rents her

apartment from plaintiff. She said that plaintiff lives in the building and has been there at various times. She stated she had seen him leaving for work and coming home.

Further evidence provided by plaintiff at this second hearing indicated that he shopped in Highland Park, paid income taxes there, voted there and obtained his driver's license there. He also testified that the detective's statement in the first hearing that no one at 24 Stevens knew him was false. Elizabeth Sheridan also testified that plaintiff lived at 24 Stevens and said she had seen him there many times.

In the face of such favorable testimony, we do not believe "competent, material and substantial evidence on the whole record" appears to sustain the board's decision against plaintiff. We believe the board erred in its decision and that the circuit court erred in affirming the board's decision. The fact that he has worked 22 years for the city and is no doubt approaching retirement eligibility we feel mandates overwhelming proof on "non-residency" and this record is far from that. However, even by normal legal standards defendant has not produced substantial evidence of plaintiff's violation of residency requirements. Therefore, upon our careful review of the findings below, we hold that they must be reversed and that plaintiff be reinstated with accrued back wages. Costs are to be paid by defendant.

J. R. McDONALD, J., concurred.

BEASLEY, J. *(concurring in part, dissenting in part)*. Noting that defendant has not bothered to file an appellate brief, I concur with the majority in finding that there is not sufficient evidence in this record to support the finding of the civil

service commission that appellant should be discharged from municipal employment by reason of ceasing to be a resident of Highland Park on August 18, 1972. However, I respectfully dissent from that portion of the majority opinion which awards appellant accrued back wages.