CHOIKE v CITY OF DETROIT

Docket No. 78-854. Submitted October 2, 1979, at Detroit.—Decided
    January 9, 1980. Leave to appeal applied for.

Detroit city fire fighters James Choike, Larry McNeill, Donald
    Kirk and Robert Wiltsie had their positions in the Detroit Fire
    Department vacated by the Detroit Civil Service Commission
    for violating a residency requirement for Detroit fire fighters.
    The four fire fighters and Detroit Fire Fighters Association,
    Local 344, I.A.F.F., AFL-CIO, brought an action against the
    City of Detroit, the individual members of the Civil Service
    Commission of the City of Detroit, the Civil Service Commission
    of the City of Detroit and the Personnel Director of the City of
    Detroit seeking an order of superintending control ordering the
    reinstatement of the four fire fighters. Wayne Circuit Court,
    Harry J. Dingeman, Jr., J., denied the request as to plaintiffs
    Choike and McNeill, but ordered the reinstatement of plaintiffs
    Kirk and Wiltsie. Plaintiffs Choike, McNeill and Local 344
    appeal the denial of reinstatement as to Choike and McNeill
    and the defendants cross-appeal from the order for the rein-
    statement of plaintiffs Kirk and Wiltsie. On appeal, the plain-
    tiffs allege that 1) the Detroit Civil Service Commission lacked
    jurisdiction to vacate plaintiffs' positions, 2) plaintiffs were
    denied due process because they were not given copies of the
    transcripts of the hearing or the hearing officer's report until
    after the Civil Service Commission had reached its decision,
    and 3) the decision of the commission was based on an im-
    proper legal standard and was unsupported by competent,
    material and substantial evidence on the whole record. *Held:*

    1. According to case precedent the Detroit Civil Service
    Commission has the authority to declare the plaintiffs' positions
    vacant for a failure to comply with the city's residency require-
    ment.

    2. The plaintiffs were given proper notice of all relevant

REFERENCES FOR POINTS IN HEADNOTES
[1] 15A Am Jur 2d, Civil Service § 28.
[2, 3] 25 Am Jur 2d, Domicil § 24 *et seq.*
[3] 25 Am Jur 2d, Domicil §§ 24 *et seq.,* 85.
[4] 25 Am Jur 2d, Domicil § 87.

proceedings and were allowed to present their cases fully before both the hearing officer and the full Civil Service Commission. The requirements of due process in the setting of an administrative hearing were satisfied.

3. The burden of proof in a residency case rests with the city, not with the employee. The circuit court recognized the correct legal standard, but improperly concluded that the city had met its burden of proof with respect to Choike and McNeill. The evidence presented consisted mainly of hearsay. The record as a whole fails to establish by competent, material and substantial evidence that Choike was not a Detroit resident. The trial court erred in shifting the burden of proof to McNeill in light of the evidence presented on the issue of McNeill's residency. The trial court correctly ruled that the city failed to establish that Kirk and Wiltsie had failed to comply with the residency requirement.

Affirmed in part, reversed in part and remanded.

1. DOMICILE — RESIDENCE — RESIDENCY REQUIREMENTS — CIVIL SERVICE EMPLOYMENT.

  The Detroit Civil Service Commission has the authority to declare vacant the position of a city fire fighter who fails to comply with the city's residency requirement.

2. DOMICILE — RESIDENCE — INTENT.

  The determination of domicile or residence is essentially a question of intent which is to be decided after careful consideration of all relevant facts and circumstances.

3. DOMICILE — RESIDENCE — RESIDENCE OF FAMILY — MARRIED MEN.

  The residence of one's family is relevant to the determination of one's residence but it is not the sole determining factor; it is possible for a married man to establish residence apart from that of his family.

4. DOMICILE — RESIDENCE — RESIDENCY REQUIREMENTS — BURDEN OF PROOF — DISCHARGE OF EMPLOYEES.

  A city which seeks to discharge city employees for noncompliance with the city's residency requirements has the burden of proof on the issue of residency, not the employee.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs* and *Kent G. Cprek*), for plaintiffs.

*George G. Matish,* Deputy Corporation Counsel, and *Kenneth G. King,* Assistant Corporation Counsel, for defendants.

Before: T. M. BURNS, P.J., and BRONSON and R. M. MAHER, JJ.

PER CURIAM. Plaintiffs James Choike, Larry McNeill and Detroit Fire Fighters Association, Local 344, I.A.F.F., AFL-CIO, appeal as of right an order of the circuit court denying their request for a writ of superintending control ordering defendant City of Detroit, through its Civil Service Commission, to reinstate plaintiffs Choike and McNeill in their former positions as Detroit city fire fighters. The defendants cross-appeal the trial court's grant of superintending control ordering the city to reinstate two other fire fighters, Donald Kirk and Robert Wiltsie.[1]

This case once again presents us with questions concerning the application of the City of Detroit's residency requirement. Detroit Municipal Code, § 2-1-1.3.[2] The individual plaintiffs' positions in the Detroit Fire Department were vacated by the De-

---

[1] Suit was filed in the circuit court on behalf of four fire fighters, each of whom had been determined to be nonresidents by the Detroit Civil Service Commission. The trial court affirmed the commission with respect to Choike and McNeill, but ordered Kirk and Wiltsie reinstated. While the city purports to be cross-appealing the reinstatement of Kirk and Wiltsie, only passing reference is made to them in the city's brief. Failure to brief an allegation of error results in an abandonment of allegation. *Mitcham v Detroit,* 355 Mich 182, 202-203; 94 NW2d 388 (1959). In any event, we affirm the trial court's order reinstating Kirk and Wiltsie.

[2] The ordinance states in part:

"All police officers, appointees in the unclassified service, except the director of the zoo and superintendent of the House of Correction, and all persons working in any branch of the classified service of the city shall reside in the city."

"Residence" was defined in Detroit Municipal Code, § 2-1-1.2:

"Residence shall be construed to be the actual domicile of the individual where he normally eats and sleeps and maintains his normal personal and household effects."

troit Civil Service Commission upon a finding that they were not residents of the City of Detroit. On appeal to the circuit court, the commission's determinations as to plaintiffs Choike and McNeill were upheld. On appeal to this Court, these plaintiffs raise three issues.

Plaintiffs first allege that the Detroit Civil Service Commission lacked jurisdiction to vacate their positions. In *Gantz v Detroit,* 392 Mich 348; 220 NW2d 433 (1974),[3] the Supreme Court construed the same Detroit residency ordinance with which we are involved in the instant case. After noting that the validity of the Detroit residency requirement had been upheld in *Williams v Civil Service Comm of the City of Detroit,* 383 Mich 507; 176 NW2d 593 (1970), the Court proceeded to deal with a question that had been left open in *Williams;* whether the commission also had the authority to enforce the requirement by declaring vacant the positions of offending employees. The *Gantz* Court held that it did, distinguishing the commission's ability to determine whether an employee continues to be eligible for city employment from the hiring authority's power to discharge an employee for disciplinary or other job-related problems. Plaintiffs in the instant case attempt to distinguish *Gantz* on the basis that it involved an employee in the city controller's office, and would have us rely instead on the opinion of the circuit court in *Grable v Detroit.*[4] Plaintiffs' position that *Grable* is *res judicata* in all cases involving Detroit fire fighters is totally without merit. *Gantz* was de-

[3] *Gantz* reached the Supreme Court a second time, but on the factual issue of plaintiff's residency. 399 Mich 649; 252 NW2d 764 (1977).

[4] On plaintiff's appeal to this Court, the issue of the commission's authority to vacate the positions of nonresident employees was not decided. *Grable v Detroit,* 48 Mich App 368; 210 NW2d 379 (1973).

cided more than two years after the circuit court's opinion in *Grable,* and more than a year after this Court's opinion. It is in no way limited to employees in the controller's office. We hold that *Gantz* is controlling, and that the Detroit Civil Service Commission had the authority to declare the plaintiffs' positions vacant for noncompliance with the residency requirement.

Plaintiffs next argue that they were denied due process because they were not given copies of the transcripts of the hearing, or the hearing officer's report, until after the Civil Service Commission had reached its decision. This issue is also without merit. Plaintiffs were given notice of all relevant proceedings, and were allowed to present their cases fully before both the hearing officer and the full Civil Service Commission. The requirements of due process in the setting of an administrative hearing were satisfied. *Napuche v Liquor Control Comm,* 336 Mich 398; 58 NW2d 118 (1953).

Plaintiffs finally argue that the decision of the commission was based on an improper legal standard and was unsupported by competent, material, and substantial evidence on the whole record. See Const 1963, art 6, § 28, *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974). To the extent that the commission presumed the plaintiffs' nonresidency based on the residency of their families, this was error. *Grable v Detroit,* 48 Mich App 368; 210 NW2d 379 (1973). The issue of a person's domicile (which Detroit Municipal Code § 2-1-1.2 makes the equivalent of residency) is principally a question of intent, and is resolved by reference to all the facts and circumstances of the particular case. The domicile of a person's family is only one factor to be considered, since it is

possible for a person to be domiciled apart from his or her spouse and children. The burden of proof in a residency case rests with the city, and not the employee. *Masters v Highland Park,* 79 Mich App 77; 261 NW2d 215 (1977), *aff'd* 402 Mich 907 (1978).

The circuit court recognized the correct legal standard but, after analyzing the factors for and against each determination of nonresidency, concluded that the city had met its burden with respect to Choike and McNeill. The evidence presented consisted largely of hearsay. Concerning Choike, it tended to show that he owned a home with his wife in Lake Orion, where his wife and children reside. Choile stated that he rents a room from his sister and brother-in-law in Detroit, where he lives, is registered to vote, receives mail, and maintains a telephone. The evidence that most directly went to the issue of Choike's domicile, "where he normally eats and sleeps and maintains his normal personal and household effects" consisted of an investigator's report that on eight of 24 occasions of surveillance at the Lake Orion address, a person believed to be Choike was seen leaving in the morning. Furthermore, four of these eight days were Choike's days off work. Choike stated that he does normally eat at his Detroit address, and that he keeps his personal belongings there. We hold that the record as a whole fails to establish by competent, material, and substantial evidence that Choike is not a Detroit resident, and that the trial court abused its discretion in holding that the city had met its burden of proof. The issue is where *Choike* is domiciled. The fact that he owns property outside of Detroit, and that his family is domiciled there, while relevant to the determination of this issue,

does not and cannot alone establish that Choike is domiciled there. The investigator's testimony concerning those occasions that a person believed to be Choike was observed at the Lake Orion address is insufficient to support the conclusion that Choike "normally" lives there.

Much of the evidence concerning McNeill is similar. His wife and children live in South Lyon, while he states that he lives with his mother in Detroit. Various licenses, registrations, and utilities list either the South Lyon or the Detroit address. McNeill's case differs, however, in two essential respects. First, McNeill stated that from 1970 until February of 1975 he spent two nights a week on the job, two nights at his mother's house, and the remaining three nights at the South Lyon Home. In February of 1975, McNeill's wife filed for divorce, and he states that he moved his things to the Detroit address at that time, returning only occasionally to South Lyon to visit his children and to pursue a wallpapering job. The trial court held that under these circumstances, the burden had shifted to McNeill to show that he had reestablished his domicile in Detroit. Second, no surveillance was conducted at either the South Lyon or Detroit addresses.

We hold that the trial court erred in shifting the burden to McNeill. McNeill stated that he left the South Lyon home to establish a domicile in Detroit in February of 1975, approximately a year and a half before the hearing on his residency. The purpose of the hearing was to determine his residency status at that time, and not at some previous time. The city had the burden of showing that, at the time of these proceedings, McNeill was not a Detroit resident. The evidence presented fails to establish that at the time of the hearing McNeill

was not a resident since it fails to establish that he normally eats, sleeps, and keeps his personal belongings somewhere other than Detroit.

The trial court is affirmed as to Kirk and Wiltsie, and is reversed as to Choike and McNeill. This cause is remanded for entry of appropriate orders reinstating Choike and McNeill to their positions in the Detroit Fire Department.

Affirmed in part, reversed in part and remanded.