*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PROMOTE THE VOTE,

      Plaintiff-Appellant,

v

SECRETARY OF STATE,

      Defendant-Appellee,

and

HOUSE OF REPRESENTATIVES and SENATE,

      Intervening Appellees.

FOR PUBLICATION
July 20, 2020

No. 353977
Court of Claims
LC No. 20-000002-MZ

PRIORITIES USA and RISE, INC.,

      Plaintiffs-Appellants,

v

SECRETARY OF STATE

      Defendant-Appellee,

and

SENATE and HOUSE OF REPRESENTATIVES,

      Intervening Defendants-Appellees.

No. 354096
Court of Claims
LC No. 19-000191-MZ

Before: METER, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

RONAYNE KRAUSE, J. *(concurring in part and dissenting in part)*

-1-

I respectfully concur in part and dissent in part. At its essence, the gravamen of plaintiffs' claims is twofold: first, portions of MCL 168.497 impermissibly restrict rights guaranteed by Const 1963, Art II, § 4; and secondly, the Secretary of State should be automatically registering everyone who ever transacted with the Secretary of State at any age. I agree with my colleagues' recitation of the law governing our standard of review. I further take no issue with my colleagues' recitation of the procedural background of this matter. Finally, I agree with the outcome reached by the majority regarding the Secretary of State's automatic voter registration policy. However, I believe this matter is much simpler and more straightforward than does the majority, and much of the law and discussion provided by the majority, while thoughtful, is either unnecessary or predicated on outdated law.[1]

## I. RIGHT TO VOTE

Plaintiffs first argue that the Court of Claims erred in holding that there is no right to vote in Michigan. If that had been the holding of the Court of Claims, it would unambiguously have been wrong. "All political power is inherent in the people." Const 1835, Art I, § 1; Const 1909, Art II, § 1; Const 1963, Art I, § 1. Indeed, the entire point of the American Revolution was a lack of representation by the people in their government. Const 1963, Art II, § 4 mandates that it must "be liberally construed in favor of voters' rights." In fact, it specifically provides that electors qualified and registered to vote have a right "to vote a secret ballot in all elections." Const 1963, Art II, § 4(1)(a). However, the Court of Claims was, for better or for worse, correct to state that there is no *absolute* right to vote. Const 1963, Art II, § 1 specifically conditions the right to vote on "except as otherwise provided in this constitution." The Voting Rights Act, 52 USC § 10101(a)(1) conditions the right to vote on being "otherwise qualified by law." Whether or not such a policy is wise or just, incarcerated persons convicted of crimes may not vote. MCL 168.758b. The Court of Claims did not err purely for expressing a more nuanced understanding of the right to vote in Michigan.

However, it is critical to review the constitutional provision at issue in this matter, because the Court of Claims clearly erred in its understanding of the *nature* of that nuance. Currently, Const 1963, Art II, § 4 provides in relevant part as follows:

(1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:

(a) The right, once registered, to vote a secret ballot in all elections.

* * *

---

[1] Although I maintain that the Legislature does not have standing to participate in this matter, *League of Women Voters of Michigan v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos 350938 & 351073), slip op at pp 6-9, I take no exception under the circumstances to considering the Legislature's arguments as if they had been presented to this Court in an amicus brief.

(d) The right to be automatically registered to vote as a result of conducting business with the secretary of state regarding a driver's license or personal identification card, unless the person declines such registration.

(e) The right to register to vote for an election by mailing a completed voter registration application on or before the fifteenth (15th) day before that election to an election official authorized to receive voter registration applications.

(f) The right to register to vote for an election by (1) appearing in person and submitting a completed voter registration application on or before the fifteenth (15th) day before that election to an election official authorized to receive voter registration applications, or (2) beginning on the fourteenth (14th) day before that election and continuing through the day of that election, appearing in person, submitting a completed voter registration application and providing proof of residency to an election official responsible for maintaining custody of the registration file where the person resides, or their deputies. Persons registered in accordance with subsection (1)(f) shall be immediately eligible to receive a regular or absent voter ballot.

\* \* \*

All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subsection shall prevent the legislature from expanding voters' rights beyond what is provided herein. This subsection and any portion hereof shall be severable. If any portion of this subsection is held invalid or unenforceable as to any person or circumstance, that invalidity or unenforceability shall not affect the validity, enforceability, or application of any other portion of this subsection.

(2) Except as otherwise provided in this constitution or in the constitution or laws of the United States the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. . . . .

Subsection (2) preserves some *but not all*, of the language found in Const 1963, Art II, § 4 *before* it was amended by Proposal 3. Former Const 1963, Art II, § 4 provided, in relevant part:

The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States. The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. . . . .

Similarly, former Const 1850, Art VII, § 6 and Const 1908, Art III, § 8 both provided, in part, that "[l]aws [may or shall] be passed to preserve the purity of elections and guard against abuses of the elective franchise."

Notably, for the first time in Michigan's history, the changes enacted by Proposal three now *expressly* makes the Legislature's right and obligation to "preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting" subject to any other provisions in the Constitution. It is well-established that the Legislature may impose some regulations upon voting and registration. However, case law relying on the unconditional grant of authority provided in *outdated* versions of former Const 1963, Art II, § 4 and its predecessors is now highly suspect. See *Todd v Bd of Election Comm'rs*, 104 Mich 474, 477, 481-483; 64 NW 496 (1895) (reviewing "the power of the Legislature to pass acts to maintain the purity of elections, which is expressly conferred upon them by Const. [1850] art. 7, § 6"); *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16-18, 34-36; 740 NW2d 444 (2007) (discussing the balance between the right to vote and the legislature's responsibility under *former* Const 1963, Art II, § 4).

To be clear: there is still no *absolute* right to vote in Michigan, and the Legislature is still not *absolutely* precluded from imposing regulations upon voting and registration. However, the obvious significance of Proposal 3 is that the Legislature's power to do so has been severely curtailed. The addition of "except as otherwise provided in this constitution . . ." simultaneously with a mandate to construe the newly-enacted rights "liberally . . . in favor of voters' rights in order to effectuate its purposes" unambiguously subjects any regulations or restrictions imposed by the Legislature to a higher degree of scrutiny. The Court of Claims and the majority fundamentally err by failing to recognize that the historic deference given to the Legislature in this context is no longer appropriate or permissible.

## II. AUTOMATIC REGISTRATION AT ANY AGE

I respectfully concur with my colleagues' conclusion that the Secretary of State's "automatic voter registration" (AVR) policy is not unconstitutional, albeit on the basis of somewhat different reasoning.

The rights conferred by Const 1964, Art II, § 4 are only enjoyed by citizens who are "electors qualified to vote in Michigan." As the majority observes, this excludes any person under the age of 18. Const 1963, Art II, § 1; US Const, Amd XXVI, § 1. Therefore, any person under the age of 18 has no right to be automatically registered to vote. Pursuant to MCL 168.492, a person may nevertheless register to vote at the age of 17½. Clearly, the Secretary of State would not even be permitted to register a person to vote if that person has not attained the age of 17½.

It appears that plaintiffs believe the phrase "as a result of conducting business" Const 1964, Art II, § 4(1)(d) should be construed as meaning an *eventual* consequence of *having ever* had any transaction with the Secretary of State. Thus, the Secretary of State would be obligated to scour its records, find anyone who is not registered to vote, monitor for any of those persons attaining the age of 17½, and then registering those persons without notice. In contrast, the Secretary of State clearly regards the phrase as meaning a *direct* result of any particular *discrete* transaction.

First, the Secretary of State's interpretation is clearly reasonable. See *Council of Organizations and Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568-570; 566 NW2d 208 (1997). Importantly, the Constitution and MCL 168.492 unambiguously establish that persons under the age of 17½ and over the age of 17½ are not similarly situated for purposes of voter registration; consequently, the Secretary of State's AVR policy cannot constitute a violation of equal protection on that basis. See *Crego v Coleman*, 463 Mich 248, 258-259, 273; 615 NW2d 218 (2000).

Furthermore, the Secretary of State's AVR policy, as apparently currently implemented,[2] provides persons with the option of *not* registering. In other words, it provides persons with notice and with a choice. There is actually a right to *not* vote. *Michigan State UAW Community Action Program Council v Austin*, 387 Mich 506, 515; 198 NW2d 385 (1972). There may be some reason why a particular person would wish to decline registration. Plaintiffs' construction would, in effect, require the Secretary of State to engage in efforts that may or may not even be technologically feasible, but—critically—would result in registering people without particularized notice and potentially against their will. As a consequence, I find plaintiffs' construction unreasonable. Therefore, I concur with the majority that the AVR policy, at least as described in the press release, does not unduly burden the right to vote found in Const 1963, Art II, § 4(1)(d).

### III. PROOF OF RESIDENCY REQUIREMENT

As an initial matter, Const 1963, Art II, § 4(1)(f)(2) specifically requires that persons seeking to register to vote within 14 days of an election must provide "proof of residency." To the extent plaintiffs' arguments could be understood as suggesting that persons need not provide anything, such an argument would clearly not be cognizable. At a minimum, plaintiffs would need to argue that the Michigan constitution violates, for example, the Voting Rights Act, 52 USC § 10101 *et seq.*, or a provision of the United States Constitution. I am troubled that plaintiffs do not present an argument that I find understandable for what *should* qualify as adequate "proof of residency" under Const 1963, Art II, § 4(1)(f)(2). Furthermore, I agree with the majority to the extent they hold that it is proper for the Legislature to enact some kind of definitional guidance to what qualifies as "proof of residency." Nevertheless, I agree with plaintiffs that the requirements set forth in MCL 168.497 are unconstitutionally restrictive and violate Const 1963, Art II, § 4.

Constitutions and statutes are interpreted by the courts in the same manner. *People v Tyler*, 7 Mich 161, 253-254 (1859). As noted, the constitution expressly requires "proof of residency," but it does not define the term. "Undefined statutory terms must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions." *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). However, an undefined term that has a particular common-law meaning, or a particular legal meaning that is well-established in that context, will be afforded that particular meaning. MCL 8.3a; *United States v Turley*, 352 US 407, 411; 777 S Ct 397; 1 L Ed 2d 430 (1957); *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 427; 751 NW2d 8 (2008).

---

[2] As the majority notes, the evidence of the Secretary of State's AVR policy comes from a press release: < https://www.michigan.gov/sos/0,4670,7-127-1640_9150-508246--,00.html >.

As it happens, "proof of residency" *has* acquired a well-established legal meaning. Courts have upheld residency as proved by a deed, *Lacey v Davis*, 4 Mich 140, 150 (1856); delivery of mail to a person at their address, *People v Brake*, 208 Mich App 233, 237-240; 527 NW2d 56 (1994), *Look v Sills*, 368 Mich 692, 694; 118 NW2d 702 (1962); *People v Hardiman*, 466 Mich 417, 423; 646 NW2d 158 (2002); by oath or testimony, *People v Johnson*, 81 Mich 573, 576; 45 NW 1119 (1890), cf. *White v White*, 242 Mich 555, 556-557; 219 NW 593 (1928); or even simply appearing in person "and advising the authorities of where" they live, *People v Dowdy*, 489 Mich 373, 386; 802 NW2d 239 (2011). The Secretary of State draws a clear distinction between proof of identity and proof of residency, and *none* of the documents accepted as proof of residency include any need for a photograph.[3] The Secretary of State accepts any two of the following as proof of residency:

> Utility bill or credit card bill issued within the last 90 days (Electronic copies are accepted)

> Account statement from a bank or other financial institution issued within the last 90 days (Electronic copies are accepted)

> Michigan high school, college or university report cards or transcripts

> Mortgage, lease or rental agreement (Lease and rental agreements must include landlord's telephone number)

> Pay stub or earnings statement issued with the name and address of the employee

> Life, health, auto or home insurance policy

> Federal, state or local government documents, such as receipts, licenses or assessments

> Michigan title and registration (Registration must show current residential address)

---

[3] The Secretary of State's guidance ostensibly pertains to driver's licenses or state identification cards. Notably, however, this guidance is the primary result on numerous search engines when searching for "proof of residency" in Michigan. Although the Secretary of State does not legally speak on behalf of Michigan, its guidance is clearly widely relied upon and familiar to essentially everyone, and it is consistent with the case law establishing the meaning of "proof of residence." Furthermore, there is no constitutional right to a driver's license, so imposing a more stringent requirement to vote—which *is* a right—would make little sense.

Other documents containing your name and address may be accepted with manager approval ["Applying for a license or ID card?", Secretary of State publication SOS-428 (rev 06/2020)[4].]

Once residence is established, it is considered to remain so until changed, *Campbell v White*, 22 Mich 178, 197- 199 (1871), and "the determination of domicile or residence is essentially a question of intent which is to be decided after careful consideration of relevant facts and circumstances," *Grable v City of Detroit*, 48 Mich App 368, 373; 210 NW2d 379 (1973).

To reiterate: the Legislature clearly can and should provide legislative guidance as to what constitutes "proof of residency." Leaving the term undefined, even in light of its well-established meaning, could easily result in the same kind of mischief once caused by voter literacy tests: when a precondition to voting is left *wholly* to the discretion of local individuals, the result could easily be intentionally or unintentionally biased implementation. Furthermore, consistent with Const 1963, Art II, § 4(2), it is entirely reasonable to require "proof of residency" to entail *some* kind of documentation created by a reasonably neutral party (e.g., a financial institution, a school, a governmental entity, or possibly a commercial entity). To the extent plaintiffs argue that MCL 168.497 is unconstitutional purely because it provides implementation guidance to election officials as to what will suffice for "proof of residency," I disagree.

Nevertheless, it is clear from the well-established meaning of "proof of residency" that it is *not* necessarily proof of identity. Again turning to the Secretary of State for guidance, proof of *identity* is explicitly distinct from proof of residency, and it may be established with a marriage license, divorce decree, United States court order for a change of name, military discharge separation document, or various forms of photographic identification (SOS-428). Under MCL 168.497, however, "proof of residency" is, in effect, *defined as proof of identity*. Pursuant to MCL 168.497(2), proof of identity is literally a driver's license or state ID card. In the alternative, MCL 168.497(3) literally requires proof of *identity* under MCL 168.2(k). In other words, the Legislature has not, in any way, provided guidance as to what constitutes "proof of residency." Rather, the Legislature has invaded the rights conferred by the constitution by substituting proof of identity in its stead. There is no level of deference that permits the Legislature to arbitrarily and radically rewrite the constitution by substituting one term for another altogether, especially in light of the plain constitutional dictate that the rights must be construed in favor of voter's rights.

I recognize that the Legislature permits applicants to partially obviate the requirement of providing proof of identity under MCL 168.2(k) by signing an affidavit. MCL 168.497(4). This is perhaps a good start, but as written, it is not a solution to the problem, especially in light of the second sentence of MCL 168.497(5), requiring issuance of a challenged ballot instead of a regular ballot.[5] If an applicant provides "proof of residency" as required by Const 1963, Art II, §

---

[4] Available at < https://www.michigan.gov/documents/DE40_032001_20459_7.pdf >.

[5] The second sentence of MCL 168.497(5) also applies to MCL 168.497(3). However, as discussed, MCL 168.497(3) unconstitutionally requires proof of identity rather than proof of residency, so the significance of subsection (5) to subsection (3) is irrelevant.

4(1)(f)(2), then they are entitled to register to vote and must be given a proper ballot. Issuing a challenged ballot instead, as a matter of course—rather than because "the inspector knows or has good reason to suspect that the applicant is not a qualified and registered elector of the precinct," MCL 168.727(1)—violates the elector's rights.[6]

Importantly, I disagree with the majority's characterization of the kinds of documents enumerated in MCL 168.497(3)(a)-(c) and (4)(a)-(c) as "common, ordinary types of documents that are available to persons of all voting ages." Not everyone owns a residence such that they would have a utility bill; not everyone has an account with any financial institution, let alone a bank; and especially in light of the current COVID-19 crisis and its secondary effects, it is increasingly common for people to have neither a current paycheck nor a government check. Furthermore, "current" is undefined, unlike in the list provided by the Secretary of State. Although "other government document" might suffice, it is vague, and its inclusion along with two forms of paychecks suggests, under the doctrine of *ejusdem generis*, an equally improperly-limited range of possibilities for what might be included. The alternatives provided by the Legislature in MCL 168.497(4) are little more than practically-unhelpful symbolic gestures, at least as MCL 168.497 is written as a whole. It is true that those documents are commonly available to certain classes of the population, but as a consequence, the Legislature's list works as a clear disenfranchisement of persons based on economic status.[7]

Put another way, the Legislature certainly may provide a definition of "proof of residency." It certainly may provide that "proof of residency" requires some kind of documentation. However, "proof of residency" has a well-understood meaning at least in general terms, and the Legislature may not drastically depart from that meaning when supplying more precise implementation details. The documents required by the Legislature might, or might not, be "the highest and best proof of residency," as the majority characterizes them. However, the constitution, pursuant to the expressed will of the people, demands far more latitude. As noted, the revisions to Const 1963, Art II, § 4 now make the "the Legislature's duty to preserve the purity of elections" subordinate to the rights enumerated in subsection (1), including an express requirement that those rights be construed liberally in favor of voters' rights.

My point, which I respectfully believe the majority misunderstands, is not that requiring proof of identity is unwise. Rather, it is that proof of identity is qualitatively different from proof

---

[6] Conversely, if the applicant does not provide proof of residency, then nevertheless permitting the applicant to vote using a challenged ballot actually confers *greater* rights than afforded by the constitution.

[7] The majority observes that the Secretary of State's list also includes documents that presume a certain economic status, and posit that some degree of economic discrimination may be "unavoidable in any scheme designed to establish a person's residency." I do not disagree with either observation. However, proof of residency is required by the constitution; proof of identity is not. I understand the question before us to be whether the Legislature is violating a right guaranteed by the constitution by requiring applicants to submit more burdensome documentation than is already constitutionally required.

of residency, and as a consequence, the Legislature is unconstitutionally burdening the right to register to vote upon supplying proof of *residency*. Had the Legislature provided guidance that actually resembles the well-understood meaning of "proof of residency," I would likely agree that this Court would be compelled to uphold it as within the bounds of reasonableness.[8] Instead, the Legislature has unambiguously provided a definition of "proof of *identity*," a much more restrictive and stringent concept, and substituted that definition in place of "proof of residency." This clearly violates Const 1963, Art II, § 4(1).[9] Any further analysis would simply be much sound and fury, signifying nothing. Because MCL 168.497 is facially violative of the constitution, I decline to engage in philosophy.

## IV. CONCLUSION

I concur with the majority in upholding the Secretary of State's AVR policy, because I find it to be a reasonable interpretation of Const 1964, Art II, § 4(1)(d), and the alternatives would either be unreasonable or in fact violative of individuals rights. I would hold that the Legislature may and should provide guidance to explain specifically what would suffice for "proof of residency" under Const 1963, Art II, § 4(1)(f)(2), including some kind of documentation requirement. However, I conclude that MCL 168.497 is unconstitutional on its face because it unambiguously establishes a proof of *identity* requirement, in plain violation of the established meaning of "proof of residency" and in equally plain violation of the constitutional mandate to "liberally construe[]" the rights enumerated in Const 1964, Art II, § 4(1) "in favor of voters' rights in order to effectuate its purposes." The purpose of Const 1964, Art II, § 4(1) is to maximize enfranchisement of persons qualified to vote; MCL 168.497 as written achieves the opposite. I would therefore reverse to the extent the Court of Claims upheld MCL 168.497.

/s/ Amy Ronayne Krause

---

[8] I respectfully disagree with the majority's implication that because it was proper for the Legislature to provide some kind of guidance, whatever guidance actually provided must, *ipso facto*, be proper under the constitution.

[9] I wholeheartedly agree with the majority that this Court should not "second-guess the wisdom of a legislative policy choice." *State Farm Fire and Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002). However, it is well-established that the courts are explicitly charged with evaluating whether a particular legislative act is permitted by the constitution. *Marbury v Madison*, 5 US (1 Cranch) 137, 177-180; 2 L Ed 60 (1803); *Green v Graves*, 1 Doug 351, 352 (Mich, 1844); *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).